## UNITED STATES *v.* SCOTT *et al.*

(*District Court, E. D. Texas.* January, 1889.)

PUBLIC LANDS—CUTTING TIMBER—LIABILITY.

A receiver in a land-office in Louisiana sold land to H. & L. for $1.25 per acre. The receiver was in error as to the price; it should have been sold for $2.50. H. & L. received a certificate acknowledging payment at $1.25 per acre, and describing the land. No one is charged with fraud. Soon after H. & L. went into possession under the certificate, they sold for cash the timber or trees on the land for fire-wood, to defendants. Before purchasing, defendants examined the official books in the land-office, which disclosed the sale to H. & L. Several years after the sale to defendants, and after the death of H. & L., who left insolvent succession, demand was made by the government for the additional $1.25 per acre, which demand was not complied with, and a compromise agreement was entered into between the government and the succession by which all the rights of H. & L. were given up to the government, and the latter returned the $1.25 per acre originally paid by H. & L. to their succession. *Held,* that the act of sale made by receiver to H. & L. was not wholly *ultra vires;* that at the time of the sale of timber to defendants, H. & L. were in *bona fide* possession of the land, with knowledge of the government, and under a certificate which in Louisiana was tantamount in its legal effect, so far as defendants were concerned, to a title translative of property; that as to defendants the sale made to H. & L. was not void *ab initio;* that, on the contrary, the transactions of the receiver with H. & L. imposed on the government, in law and equity, obligations of which it can be acquitted only

by proper judicial proceedings, or by some such compromise as is shown to have been made by the succession of H. & L. with the government; that the government agent, acting within the scope of his authority, so far as selling the particular land is concerned, caused a condition of things to exist of which the government had full knowledge for several years, which were misleading, and did mislead defendants into purchasing the timber from H. & L.; that in law and equitable dealing the government is estopped from demanding at this late day from defendants any further payment for the timber cut by them while H. & L. were in possession of the land under the certificate, circumstances, and facts shown by the evidence in this case.

*(Syllabus by the Court.)*

At Law.

*J. E. McComb,* for the United States.

*Jas. Turner,* for defendants.

BOARMAN, J. The government sues to recover from defendants $225, the value of timber cut and taken away from public lands in Louisiana. The facts shown in the agreement of counsel are substantially as follows: That Hazelhurst and Lane, in 1881, entered 80 acres of land, and paid $1.25 per acre for it, in the land-office in Natchitoches; that the register, acting in good faith, gave them a certificate showing the entry, the payment of $1.25 per acre, and the description of the said land; that the defendants examined the records in the land-office, and found a recital of the facts just stated; that they purchased the timber on the land for cord-wood, and paid a fair price therefor to H. & L.; that they took 900 cords, worth 25 cents per cord in the tree, from the land, and disposed of the same for their own use; that under the law the land in question was on the market, and was held at $2.50 per acre; that nothing was done or said by the government in the premises, until several years after defendants had bought and disposed of the timber, and H. & L. were dead and their successions were known to be insolvent; that in 1886 the government, having learned of the fact that the register had made a mistake in selling the land in question at $1.25, instead of $2.50 per acre, demanded the additional $1.25 from H. & L.; that they refused to pay the $1.25 per acre, and a compromise was made by the government with the legal representatives of H. & L. in which the money originally paid by them was returned to their successions, and an act relinquishing the land to the government was entered into said representations; that the money paid back by the government was about equal to the value of the cord-wood cut by defendants; that this suit was not instituted until after the act of relinquishment, and the money was returned by the government. Under this statement of facts it is contended that the government never parted with its ownership of the said lands; that the entry and payment made by H. & L. for the land, admitting it was made in good faith, did not authorize H. & L. to cut the timber, or sell it to defendants; and the defendants have no defense in law or equity against the government's demand in this suit. On the other hand, it was contended that the government, under the facts stated, has no cause of action against defendants. It is conceded there were no fraudulent acts or understanding practiced by any of the parties to the trans-

actions in the land-office.   Without passing upon the plaintiff's conten-
tion that the ownership of said land was never in any degree vested in
H. & L., it seems to be true that they were, at the time of their sale of
the timber to the defendants, holding the land as possessors in good faith,
and with the knowledge of the government, under the register's certifi-
cate then on record in the land-office at Natchitoches.   Under the fed-
eral decisions, such a certificate, issued by the register in pursuance and
in compliance with the law providing for the sale of public lands, would
have entitled the original holder thereof to demand and receive from the
government a patent or complete title to the lands described therein,
and under the decisions of the courts in Louisiana the certificate ob-
tained and held by H. & L. under the circumstances attending the deal-
ings they had with the land-office would be tantamount to a legal title
in H. & L., and it could not, after defendants had acquired the rights
claimed by them, be treated by the government as void, though it might
in proper judicial proceedings be voidable.   But it is contended that
the certificate was issued by the register, who had no authority in law
to sell or convey the said land to any one for a price less than than $2.50
per acre, and that H. & L., and these defendants, were charged with
full knowledge of the law, and knew the register was without authority
to impose any obligations on the government towards or in favor of H.
& L. by the act of sale, which was void *ab initio*, and under which they
claimed to have the right to sell the timber to defendants.   Something
of this contention is true.   It is true the register had authority in law
to sell the public land in question, and by his certificate to vest a legal
title in the purchaser; but he had no authority to sell the same to any
one for a less price per acre than $2.50.   Admitting his authority to
sell, and that he could not sell for $1.25 per acre, it does not follow, un-
der the decisions of the federal or state courts, that no obligations of an
equitable or legal nature were imposed on the government in the deal-
ings of the register with H. & L.   On the contrary, they acquired legal
and equitable rights against the government, from which it could be ac-
quitted only by proper remedies at law or equity, or by a compromise,
such as was finally entered into in the act of relinquishment.   Whether
it be true or not, in law, that this certificate and payment by H. & L.
vested no ownership in them of the land, it put them in possession of
it, and conferred on them the lawful right, on paying the additional
$1.25 per acre to the government, to demand a patent for the land.
This possession and right was in H. & L., and was fully recognized and
acquiesced in by the government, at the time defendants bought and
used the timber, and remained in them until they returned the posses-
sion and their legal and equitable rights in the land to the government
in the act of relinquishment.

It is well known, as the counsel for the government suggests, that the
United States are not bound by the acts and declarations of its agents,
made beyond the scope of their lawful powers.   It is well known, too,
that their unlawful acts or declarations cannot be ratified by their own
own subsequent acts, or by other ministerial or executive officers of the

government. The acts of the register were not wholly *ultra vires*. He had ample authority to sell and convey the land to H. & L., and the certificate under which he held showed a legal title, or one translative of property in them. He exceeded his authority only in the fact that he, in his error as to the class of lands conveyed to H. & L., took $1.25, instead of $2.50, per acre. This error did not of itself invalidate the sale. Notwithstanding it, the purchasers, at any rate so far as the defendants herein are concerned, held and possessed the land under an authentic, genuine act which they rightfully considered and treated as tantamount to a legal title in H. & L. Considering that the register had ample authority to sell and convey the land to H. & L. for $2.50 per acre, and keeping in view the circumstances and facts attending the transactions, and which show the relation of defendants to H. & L., and the dealings of the latter with the government, I do not think it violates either one of the two rules of law relied on by plaintiff's counsel to hold that the government is forbidden by law as well as equitable dealing to recover against defendants. The government allowed a condition of things to exist at the time H. & L. sold the timber to defendants, and for several years afterwards, which were misleading to the defendants. They, as third persons, were, under the laws of Louisiana, authorized to construe the certificate and other evidences of the transactions on record at Natchitoches, as vesting in H. & L. a legal title to, if not complete ownership of, the lands. As the case now presents itself, one of the two parties to this suit has to suffer a loss. The government having become again possessed of the land, must lose the value of the timber cut by defendants, or the defendants have to be made to pay a second time for what they once paid for in good faith to H. & L. Under the law, as well in equitable fair dealing, I think the loss should fall on the government, rather than on the defendants. On the statement of facts agreed to the defendants are entitled to relief.